**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Wilson-Davis & Co., Inc., | ) | CASE NO. 1:16 CV 3056 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| James Mirgliotta, et al, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Pending before the Court is Plaintiff Wilson-Davis & Co., Inc.'s Motion to Alter or Amend Judgment Under Rule 59(e), or, Alternatively, for Relief from Judgment Under Rule 60(b) (Doc. 51). For the following reasons, the motion is DENIED.

Wilson-Davis filed this action seeking a declaratory judgment that it is not required to arbitrate claims that Defendants James Mirgliotta and James Mirgliotta, as administrator of the Estate of Bette Mirgliotta, filed against it in an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). On April 28, 2017, this Court found that Defendants were customers of Wilson-Davis and that, with respect to the Defendants' losses in VGTL stock and New Market Enterprises, the dispute between the parties arose in connection with the

business activities of Wilson-Davis or its associated persons.[1] As such, the Court determined that Defendants' claims with respect to these investment losses were subject to FINRA arbitration. In its current motion, Wilson-Davis argues that this Court erred in finding that (1) Defendants were its customers for purposes of their investment losses in New Market Enterprises and (2) the dispute regarding their losses in New Market Enterprise arose in connection with Wilson-Davis or its associated persons.

A district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2012). Rule 60(b) provides that a party may be relieved from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). With respect to Rule 60(b)(6), the provision on which Wilson-Davis relies, the Sixth Circuit has emphasized that:

> [R]elief under Rule(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. This is especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. This is because almost every conceivable ground for relief is covered under

---

[1] Familiarity with the Court's Order of April 28 is presumed.

the other subsections of Rule(b). Consequently, courts must apply Rule(b) relief only in unusual and extreme situations where principles of equity *mandate* relief.

*McMurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002).

Here, Wilson-Davis argues that it is entitled to relief under Rule 59(e) to prevent a manifest injustice and under Rule 60(b)(6) because there is no evidence that it or its associated person had any involvement with the Mirgliottas' investments in New Market Enterprises. As such, it argues that the Court erred in finding that Defendants were its customers with respect to this transaction and that their claims regarding their losses in New Market Enterprises arose in connection with Wilson-Davis's business activities or its associated member. The Court does not agree.

While Mr. Mirgliotta had difficulty recalling all of the specific details of his conversations with Werbel and Cervino from four years ago, he testified numerous times that he sent his money to Liberty Bank and then on to New Market Enterprises because of Cervino, a Wilson-Davis employee, as well as Werbel and Durante:

> Q: So, were you prepared to accept these transactions because Mr. Werbel had done them?
>
> ***
>
> A: Yes.
>
> Q: *And so he was your agent for purposes of these transactions?*
>
> ***
>
> A: *Along with Mr. Cervino from Wilson-Davis.*
>
> Q: Well, tell me how you think Mr. Cervino was your agent.
>
> A: Well, he's the agent of record with the Wilson-Davis Company, who I thought was all part of this...transaction.

> Q: Tell me what you mean, it was all part of this transaction.
>
> A: What can I tell you that I haven't already told you? *Money went from TD Ameritrade, to Wilson-Davis, to Liberty Bank, to New Market Enterprises, all per the instructions of Mr. Werbel, Mr. Durante, Mr. Cervino.*

(Jim Mirgliotta Dep., April 12, 2017, at 68-69) (emphasis added).

> Q: Tell me what facts of which you are aware that indicate that Mr. Cervino had anything to do with your sending money to New Market?
>
> A: A phone conversation that I had with him about the wire transfer.
>
> Q: But he just said that it was coming back to you, didn't he?
>
> A: I don't recall that.
>
> Q: I see. *What do you recall that he said?*
>
> A: *That we were moving the money from Wilson-Davis to Liberty Bank.*
>
> Q: And so it went from there to Liberty Bank, and that's what Mr. Cervino told you.
>
> A: *And it was going from there to Money Market [sic].*

(*Id.* at 70) (emphasis added).

> Q: *I asked you if, in sending the wire to New Market Enterprises, as Mr. Eisenberg and Mr. Werbel had told you to do, did it–*
>
> A: *And Mr. Cervino.*
>
> Q: No, he didn't tell you.
>
> A: *Yes, he did.*

(*Id.* at 73).

> Q: Well, I think this is important, and I'm going to ask you to tell me everything you can remember that Mr. Cervino told you on the telephone.
>
> A: I don't recall, that was four years ago, other than *the instructions were clear that I was getting a phone call from Mr. Cervino, okay, about the money transfer,*

> *and the instructions were then to send it to New Market Enterprises.* That's all I can tell you.

(*Id.* at 73-74).

In addition to Mr. Mirgliotta's testimony, the evidence shows that Durante and Cervino had discussions regarding the Mirgliottas' accounts at Wilson-Davis just three days before Durante (under his Eisenberg alias) directed Mr. Mirgliotta to wire the Mirgliottas' money out of their Wilson-Davis account. (Pl.'s Dep. Ex. 10) (email from Eisenberg to Cervino, dated July 16, 2013) ("Here are the current account statements for James and Bette Mirgliotta. The cash is in their accounts at TD now. $212k for James and $530k for Bette. Please ADAT the cash in to their accounts at WDCO ASAP."). Finally, on January 6, 2016, Cervino, Werbel, and Durante were indicted for their involvement in a scheme to defraud investors out of millions of dollars.

As the Court noted in its April 28 Order, this evidence is sufficient to show that Defendants were Wilson-Davis's customer with respect to New Market Enterprise. In *Vestax Secs. Corp. v. McWood*, 280 F.3d 1078, 1082 (6th Cir. 2002), the Sixth Circuit held that an investor is the customer of a FINRA member by virtue of purchasing securities on the advice of the member's registered representatives. This is so even where the investor has not established an account with the FINRA member. (*See* Doc. 49, at 9 n.5). Thus, when the Mirgliottas conducted business with Cervino and transferred their money from Wilson-Davis to Liberty Bank and ultimately to New Market Enterprises on Cervino's (as well as Werbel's and Durante's) recommendation, they were customers of Wilson-Davis with respect to this transaction, even if the money did not go directly from Wilson-Davis to New Market Enterprises.

The evidence also supports that Defendants' claim against Wilson-Davis for negligently

failing to monitor their accounts and negligently failing to train and supervise its advisors arises in connection with the activities of Cervino, Wilson-Davis's associated person. Mr. Mirgliotta testified multiple times that he acted on the advice of Cervino when he transferred his and his wife's money out of Wilson-Davis to Liberty Bank and then to New Market Enterprises. Thus, the claim must go to arbitration. As the Court noted in its April 28 Order, whether Defendants can, in fact, prove that their losses in New Market Enterprises resulted from Wilson-Davis's lack of supervision over Cervino is a matter for the arbitration panel to determine. *Vestax*, 280 F.3d at 1082 (holding that "[a] dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business" and noting that the investors intended to prove in arbitration that Vestax's failure to properly supervise its registered representatives led to the loss in question).

IT IS SO ORDERED.

       /s/ Patricia A. Gaughan
       PATRICIA A. GAUGHAN
       United States District Judge

Dated: 5/25/17